## THE CITY OF HARTFORD.

*(District Court, S. D. New York. March 15, 1882)*

1. ADMIRALTY—PRACTICE—PROPERTY ARRESTED—SECURITY.

    Courts of admiralty, by virtue of their general powers in regulating their practice for "the due administration of justice," as well as under the forty-sixth supreme court rule in admiralty, have power to require the security upon any bond or stipulation given as a substitute for property arrested *in rem* to be kept good, and in case of the insolvency of either surety to require additional security to be filed, and in default thereof that the defence be stricken out. Cases of this kind not provided for by the general rule may be met by order in the cause.

2. SAME—APPLICATION OF PRE-EXISTING RULES.

    The pre-existing rules in regard to sureties in stipulations should be applied by analogy to similar cases arising upon bonds given under the act of 1847.

3. SAME—DEATH OF SURETY—ADDITIONAL SURETY REQUIRED.

    One of two sureties in such a bond given for the release of a vessel having died insolvent, and the claimant being a foreign corporation, and having made an assignment for the benefit of its creditors, *held*, that an additional surety must be given in place of the surety deceased, according to the rules applicable to stipulations.

Motion for Further Security.

*Edward D. McCarthy*, for libellants.

*Huntley & Bower*, for claimant.

BROWN, D. J. The libel in this case was filed on the twenty-second day of March, 1881, to recover $1,012.15 damages for injuries by collision. The Hartford & New York Steam-boat Company appeared as claimant, and gave a bond under the act of 1847 for the release of the vessel arrested, with two sureties, who were approved upon justification. The claimant afterwards filed an answer, and the cause is still pending in this court. Upon an affidavit showing that one of the sureties has died insolvent, that the claimant is a foreign corporation, and has made an assignment of all its property and is insolvent, the libellants move for an order that the claimant file additional security, and that the other surety be required to appear and be examined touching his sufficiency. In reply, an affidavit is submitted on the part of the claimant, asserting on information and belief that the claimant's assets are sufficient to pay their creditors and leave a large surplus, and that the living surety is a person of large means and of ample responsibility; and an affidavit has also been submitted by the surviving surety to the effect that his circumstances are unchanged since his approval on the bond. As the moving affidavit does not allege any change in the circumstances of

the living surety since his approval, no sufficient reason appears for requiring further justification on his part.

Some question has been raised concerning the power of the court to require additional security in place of the deceased surety in the bond given under the act of 1847. Though I have not been referred to any express adjudication on the subject where the authority of the court has been questioned, it has certainly been the practice of this court, in repeated instances to require further security, as in case of "stipulations."

The power to require additional security, where that previously given has become insufficient or worthless, like that of abating exorbitant security, has long been recognized as one of the incidental powers of the court in regulating its practice and proceedings. By the sixth section of the act of August 23, 1842, (5 St. at Large, 518,) the supreme court were authorized "generally to regulate the whole practice of the said [admiralty] courts." Acting upon this authority, and recognizing the requirement of additional security as belonging to the department of "practice and proceedings," the supreme court, by rule 6 of its general admiralty rules, provided that "in all suits *in personam,*   *   *   *   if either of the sureties shall become insolvent pending the suit, new sureties may be required by the order of the court to be given, upon motion and due proof thereof;" and by rule 46 the district and circuit courts, "in all cases not provided for by the foregoing rules, are to regulate the practice of said courts, respectively, in such manner as shall be deemed most expedient for the due administration of justice in suits in admiralty." By rule 55 of this court it is accordingly provided that "in all cases of stipulations in civil and admiralty causes any party having an interest in the subject matter may move the court, on special cause shown, for greater or better security."

While the sixth general rule in admiralty does not provide expressly for suits *in rem,* the fifty-fifth rule of this court does apply to suits *in personam* and to suits *in rem* alike; and this power, "in all cases of stipulations," has never been questioned, so far as I am aware. The language of the fifty-fifth rule of this court has not been amended since the act of 1847 so as to embrace expressly the cases of sureties in bonds given under that act. But the authority expressly conferred by rule 46 of the supreme court rules in admiralty upon district and circuit courts, to "regulate the practice as they shall deem most expedient for the due administration of justice," as well as their inherent power as courts of admiralty under the consti-

tution, extends no less to the enactment of general rules than to just provisions for cases as they arise not previously provided for by any express rule.

In the case of *The Virgo*, 13 Blatchf. 255, the sureties in the stipulation given in the district court had become insolvent during the appeal to the circuit, in which court a motion was made for new sureties, and there was no rule in that court in regard to the subject. The court, *Benedict*, J., says: "In the absence of a rule the court has power to remedy the omission by order made in the cause." Upon the objection that the stipulation once given for value as a substitute for the vessel could not be required to be changed, he continues: "It is not the sole substitute. * * * If it were so, additional security could never be required when once the vessel is released; and yet the right to require additional sureties to the stipulation in the district court is declared by the rules of the court. * * * I doubt not, therefore, that it is proper to say that part of the obligation which claimants in actions *in rem* assume when they receive at the hands of the court property in the custody of the court by substituting therefor personal security, by way of a stipulation for value, is to maintain their stipulation good in the matter of the sureties."

In 2 Conkling's Adm. Pr. 112, it is said: "As the sole object of the security is the attainment of justice between the parties, the court is bound so to regulate the exercise of the right to exact it as to prevent its abuse as well as its *abridgment*."

In providing for the discharge of property arrested under process *in rem*, by giving a bond or stipulation in double the amount claimed, according to the act of March 30, 1847, I do not think that congress intended anything more than to provide a form of security in addition to those already existing, subject to the same incidental powers of the court in the administration of justice as the forms of the security previously in use. It could not have been its intention to establish a form of security which should be so far beyond the ordinary incidental and acknowledged powers of the court as to leave the parties practically remediless and defeat the ends of justice, in the case of the insolvency of the sureties. I must hold, therefore, that the power of the court to regulate its practice for the "due administration of justice" extends to cases of insolvency of sureties under the act of 1847, as in cases of stipulators and their sureties in the former course of procedure.

The rules of this court in regard to such stipulations should therefore be applied by analogy to similar cases arising under bonds given

under the act of 1847. The act of 1847 does not expressly say whether there shall be one or two sureties. It provides for "sufficient surety, to be approved by the judge of the court," etc., and for "judgment on the same both against the principal and *sureties*." Upon this language, I think, it is clearly within the rules or the discretion of the court to require one or more sureties, according to the circumstances of the case. The fifty-ninth rule of this court requires that "all stipulations in causes civil and maritime shall be executed by the principal party, (if within the district,) and by at least one surety resident therein," and that "non-resident parties must supply at least two sureties;" and this rule has been followed by analogy, in this district, in bonds given under the act.

In the present case the claimant is a non-resident, and two sureties were accordingly given. The bond would not otherwise have been approved. One of the sureties having died insolvent, I think the ordinary rule in regard to stipulations must be applied in regard to this bond given under the act of 1847. Especial reason for invoking this rule exists in this case, since the claimant, a foreign corporation, having made an assignment, is presumably insolvent.

An order should therefore be entered that an additional surety be furnished by the claimant, to justify on due notice; and, in case of failure so to do within such time as may be allowed by the court, the claimant's defence to be stricken out.